**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY WILLIAM JULIUS<br>5308 Bamboo Lane<br>Naperville, IL 60564<br><br>Plaintiff,<br><br>v.<br><br>FIFTH THIRD BANK<br>c/o Paul L. Reynolds<br>38 Fountain Square Plaza<br>Cincinnati, OH 45202<br><br>Defendant. | : | Case No. 1:09-cv-811<br><br>Judge: ______________________________<br><br>**COMPLAINT WITH JURY DEMAND ENDORSED HEREON** |

## PARTIES

1. Plaintiff Jeffrey William Julius is a citizen and resident of the State of Illinois.

2. Defendant Fifth Third Bank is an Ohio corporation with its primary place of business in Ohio.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Defendant because it conducts business within this district and division.

4. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

5. Venue is proper in the Southern District of Ohio, Western Division, pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to these claims occurred in the Southern District of Ohio, Western Division.

## FACTUAL ALLEGATIONS

6. In April 2002, Defendant hired Plaintiff as a Product Specialist within the Institutional Client Group.

7. Throughout his employment, Plaintiff received numerous awards and accolades for his performance.

8. In October of 2006, Plaintiff and Defendant entered into an incentive compensation agreement based upon Plaintiff's position as the National GSS Team Leader.

9. As compensation for his role as the GSS Product Specialist, Defendant agreed to pay Plaintiff quarterly bonuses based on projected sales for accounts he participated in.

10. As a part of the compensation agreement, Defendant agreed to perform an audit after 12 months of sales had been billed. Based upon that audit, Defendant agreed to either adjust upwards or downwards Plaintiff's compensation based upon the actual sales realized. Therefore, if Defendant realized greater sales than projected, Defendant agreed to pay Plaintiff a sales "true-up" in the amount of the difference between the actual sales and the projected sales.

11. As a GSS Product Specialist for Defendant, Plaintiff participated in numerous sales between October 2006 and June 2008 in good faith of the agreement he had with Defendant.

12. Defendant performed the audits on a quarterly basis and paid Plaintiff sales "true-ups" through the first quarter of 2007.

13. In November, 2007, Christopher Bell became Plaintiff's supervisor and Plaintiff's position with the Defendant changed dramatically.

14. Bell threatened to terminate Plaintiff unless he agreed to take a demotion to the Senior Product Specialist position and relinquish his role as Manager of the National Relationship Group.

15. Bell constantly threatened Plaintiff that his name was on a list of individuals to terminate for an upcoming reduction-in-force.

16. Bell prevented Plaintiff from speaking with Bell's supervisors about his conduct.

17. Plaintiff enjoyed his job immensely and planned to work for the Defendant for many years. However, as a direct result of Bell's intimidation and threats, Plaintiff was forced to resign.

18. Prior to leaving Defendant, Plaintiff received a sales "true-up" for the first quarter of 2007, which was paid after the first quarter of 2008.

19. Despite participating in numerous sales as the GSS Product Specialist during quarters two, three, and four of 2007, and the first quarter of 2008, Plaintiff did not receive any sales "true-up" compensation for these quarters.

20. Plaintiff expected to be compensated for any realized sales "true-ups" at the time he participated in the sales.

21. Plaintiff has requested the sales "true-ups" he is owed on several occasions and Defendant refuses to pay him the money he is owed.

22. Upon information and belief, Defendant requires that employees who have left the Company pay back sales "true-ups" when Defendant receives less sales than were projected.

23. Upon information and belief, Defendant realized significantly greater sales than projected for the accounts Plaintiff participated in during quarters two, three, and four of 2007, and the first quarter of 2008.

## COUNT I

## (Breach of Contract)

24. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

25. Plaintiff and Defendant had an express contract for compensation, which is attached as Exhibit A.

26. Defendant breached this agreement by failing to pay Plaintiff the sales "true-ups" to which he was entitled.

27. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered injuries and damages for which he is entitled to recovery.

**COUNT II**

**(Breach of Duty of Good Faith and Fair Dealing)**

28. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

29. There exists in every contractual relationship an obligation of good faith and fair dealing.

30. Under Ohio law, every contract contains an implied duty for the parties to act in good faith and deal fairly with each other. All agreements have an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the exercise of the parties' rights and obligations.

31. Defendant Fifth Third Bank has breached the implied covenants of good faith and fair dealing contained in the incentive compensation agreement by arbitrarily and unreasonably acting in contravention thereof.

32. Defendant's willful and malicious conduct proximately caused Plaintiff to suffer damages and he is entitled to judgment.

**COUNT III**

**(Quantum Meruit)**

33. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

34. Plaintiff performed work by participating in sales. Defendant benefitted from Plaintiff's performance. Defendant was aware of Plaintiff's participation in sales for the last three quarters of 2007 and the first quarter of 2008.

35. Defendant knew or should have known that Plaintiff participated in the sales with the expectation of being compensated for his work.

36. Defendant had a reasonable opportunity to prevent Plaintiff from participating.

37. Defendant failed to compensate Plaintiff for the work he performed and benefitted from his performance.

38. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered injuries and damages for which he is entitled to recovery.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

(a) That Defendant be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be awarded all lost compensation as a result of Defendant's breach of the incentive compensation plan;

(c) That Plaintiff be awarded compensatory damages;

(f) That Plaintiff be awarded reasonable attorneys' fees and costs; and

(g) That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Respectfully submitted,

/s/ Katherine Daughtrey

Katherine Daughtrey (0082245)
Kelly Mulloy Myers (0065698)
Trial Attorneys for Plaintiff
Freking & Betz, LLC
525 Vine Street, Sixth Floor
Cincinnati, Ohio 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*kdaughtrey@frekingandbetz.com*
*randy@frekingandbetz.com*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

/s Katherine Daughtrey